UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| MARK J. HODGES, | ) | No. 05 B 62676 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MARK J. HODGES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 A 683 |
| | ) | |
| CIT GROUP; GREENPOINT MORTGAGE; | ) | |
| NORTH FORK BANCORPORATION, | ) | |
| INC.; MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS; and | ) | |
| ALLEGIANCE MORTGAGE CORP., | ) | |
| | ) | |
| Defendants. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling is the motion of defendant CIT Group pursuant to Rule 12(c), Fed. R. Civ. P. 12(c) (made applicable by Fed. R. Bankr. P. 7012(b)), for judgment on the pleadings on the adversary complaint of debtor Mark J. Hodges. In his complaint, Hodges seeks to rescind his mortgage with CIT based on federal and state statutory violations he claims occurred when the loan was made. CIT argues that because judgment has already been entered in its favor in its state foreclosure action against Hodges, this court lacks jurisdiction to hear his action.[1] For the reasons that follow, CIT's motion will be denied.

---

[1] Although lack of subject matter jurisdiction is usually raised through a motion under Rule 12(b)(1), a Rule 12(c) motion is another way to raise it. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 at 217 (2004). Jurisdiction can be raised at any time. *See* Fed. R. Civ. P. 12(h)(3) (made applicable by Fed. R. Bank. R. 7012(b)).

Case 06-00683   Doc 36   Filed 10/04/06   Entered 10/04/06 09:31:11   Desc Main
          Document      Page 2 of 11

## 1. Background

A defendant's Rule 12(c) motion for judgment on the pleadings is the equivalent of a motion to dismiss under Rule 12(b)(6). *Guise v. BWM Mortgage, LLC,* 377 F.3d 795, 798 (7th Cir. 2004). The court therefore assumes all facts alleged in the complaint to be true, viewing the allegations in the light most favorable to the plaintiff. *Id.* In ruling on the motion, the court may also consider documents attached to the complaint as exhibits. *See* Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bankr. P. 7010); *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452-53 (7th Cir. 1998).

Together with its exhibits, the complaint here alleges the following relevant facts. Mark Hodges lives in Highland Park, Illinois. In 2001, he refinanced the existing mortgage on his residence, obtaining a new loan from, and executing a note in favor of, GreenPoint Mortgage Funding, Inc., a subsidiary of North Fork Bancorporation, Inc. Mortgage Electronic Registration Systems was the nominee of GreenPoint for purposes of the loan. Hodges obtained the GreenPoint loan through a mortgage broker, Allegiance Mortgage Corp.

The GreenPoint/Mortgage Electronic Registration Systems loan was later assigned to CIT Group. In September 2003, CIT sent Hodges a notice of default stating that he had failed to make his mortgage payments for the preceding three months.

Hodges must never have cured the arrearage, because in June 2004, CIT filed an action in Illinois state court to foreclose the mortgage. Hodges was served with the complaint in the action both personally and by publication. Despite service, he failed to answer the complaint, and on January 5, 2005, the state court entered a default order against all defendants and a judgment of foreclosure. The judgment of foreclosure made various findings of fact and conclusions of law – among them, that Hodges was "justly indebted" to CIT. The judgment declared that the statutory

redemption period would expire on April 5, 2005, and ordered the property sold upon its expiration.

The statutory redemption period expired. Before a sale could occur, however, Hodges filed a petition for relief under chapter 13 of the Bankruptcy Code. The bankruptcy case was dismissed when Hodges failed to make payments to the trustee, but Hodges filed a new chapter 13 case in October 2005. That case – the underlying bankruptcy case here – is pending. As far as the record shows, there has never been a foreclosure sale, and without a sale there has necessarily been no order confirming a sale.[2]

In March 2006, Hodges filed the adversary complaint now before the court, naming as defendants CIT, GreenPoint, North Fork, Allegiance Mortgage, and Mortgage Electronic Registration Systems. The lengthy, eight-count complaint alleges violations of various federal and state statutes, including the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Illinois Fairness in Lending Act. It also alleges common law claims for fraud, breach of contract, and breach of fiduciary duty against some or all of the defendants. As relief, Hodges asks for rescission of the mortgage, a refund of his loan payments, damages, and attorneys fees.

CIT has now moved for judgment on the pleadings on the ground that this court lacks subject matter jurisdiction over the adversary proceeding. According to CIT, the state court in the foreclosure action found Hodges liable on the note, and "[t]his Court does not have the

---

[2] The adversary complaint does not actually say there has been no foreclosure sale. Had there been a sale pre-petition, however, there would be no reason to address the mortgage in the bankruptcy court. See Colon v. Option One Mortgage Corp., 319 F.3d 912, 920-21 (7th Cir. 2003) (holding that once an Illinois foreclosure sale occurs, a chapter 13 debtor loses the right under section 1322(b) of the Code to cure mortgage defaults while maintaining current mortgage payments). CIT could have moved immediately to have the automatic stay lifted, allowing the foreclosure action to proceed in the state court. Because CIT has never moved to modify the stay, it is fair to infer that no foreclosure sale has occurred.

jurisdiction to overturn the judgment entered by the State Court." (CIT Mot. at 3). The adversary proceeding, CIT maintains, is barred by the *Rooker-Feldman* doctrine.

## 2. Discussion

CIT's motion must be denied. The foreclosure action in the state court has not ended – not even at the trial level. Because the action is still pending, the *Rooker-Feldman* doctrine does not deprive this court of subject matter jurisdiction over Hodges' adversary proceeding.

The *Rooker-Feldman* doctrine takes its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Colum. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). In each, the losing party in a state court case filed a federal action asserting that the state judgment was invalid. *See Feldman*, 460 U.S. at 465-75; *Rooker*, 263 U.S. at 414-15. In each, the Court held that the district court lacked jurisdiction over the action. *Feldman*, 460 U.S. at 485; *Rooker*, 263 U.S. at 415-16. The reason, the Court explained in *Rooker*, is that hearing the action "would be an exercise of appellate jurisdiction," and "no court of the United States other than this court" has appellate jurisdiction over state court decisions. *Rooker*, 263 U.S. at 416. *Feldman* endorsed this view, holding that no federal court but the Supreme Court can hear "challenges to state-court decisions in particular cases."[2/] *Feldman*, 460 U.S. at 485.

The *Rooker-Feldman* doctrine thus stands for the fundamental proposition that "lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *see also Zurich*

---

[2/] *Feldman* did refine *Rooker* in one respect. *See Leaf v. Supreme Ct. of State of Wis.*, 979 F.2d 589, 596 (7th Cir. 1992). Although lower federal courts lack jurisdiction to review a state court decision, the Court in *Feldman* clarified that federal courts do have jurisdiction to entertain a general challenge to the constitutionality of the state statute involved in the state court action. *Feldman*, 460 U.S. at 485.

*Am. Ins. Co. v. Superior Ct. for the State of Cal.,* 326 F.3d 816, 821 (7th Cir. 2003); *Brokaw v. Weaver,* 305 F.3d 660, 664 (7th Cir. 2002). This is true "no matter how erroneous or unconstitutional the state court judgment may be." *Remer v. Burlington Area Sch. Dist.,* 205 F.3d 990, 996 (7th Cir. 2000). Parties seeking review of state court decisions must pursue their appellate rights in the state courts and then in the U.S. Supreme Court. *Long,* 182 F.3d at 554. Under *Rooker-Feldman,* a party cannot "use the federal courts as a substitute appellate tribunal for the state courts." *Epps v. Creditnet, Inc.,* 320 F.3d 756, 761 (7th Cir. 2003).

One question that remained after *Feldman,* however, was what sort of "state-court decisions" barred federal jurisdiction. *Feldman,* 460 U.S. at 485. Several courts of appeals concluded that *Rooker-Feldman* was not limited to final state court judgments but also barred federal actions challenging interlocutory orders. *See, e.g., Doe & Assoc. Law Offices v. Napolitano,* 252 F.3d 1026, 1030 (9th Cir. 2001); *Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 199 (4th Cir. 2000); *Campbell v. Greisberger,* 80 F.3d 703, 707 (2nd Cir. 1996); *Richardson v. District of Colum. Ct. of Appeals,* 83 F.3d 1513, 1515 (D.C. Cir. 1996). These courts focused on the "purpose of the doctrine," which they believed was "to protect state judgments from collateral attack." *Doe,* 252 F.3d at 1030. Given this purpose, they said, the doctrine could not be reconciled "with the idea that the district court would be free to review [a state court decision] so long as the decision was *interlocutory.*"[4] *Richardson,* 83 F.3d at 1515

---

[4] The Seventh Circuit never fully embraced this view. After deferring the question for many years, *see, e.g., Centres, Inc. v. Town of Brookfield,* 148 F.3d 699, 702 n.4 (7th Cir. 1998) (calling the doctrine's applicability to interlocutory orders "an open question"), the court at last extended *Rooker-Feldman* to bar a federal action attacking an interlocutory state court order when state procedure made the order appealable and the federal action was simply a way of "circumventing the prescribed mode of appellate review," *see Schmitt v. Schmitt,* 324 F.3d 484, 487 (7th Cir. 2003).

-5-

(emphasis in original).

This expansion of *Rooker-Feldman* came to an abrupt halt last year with *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). In *Exxon*, Saudi Basic Industries ("SABIC") sued two Exxon subsidiaries in state court, and the subsidiaries counterclaimed. *Id.* at 289. Two weeks later, Exxon and its subsidiaries brought a parallel federal action against SABIC. *Id.* The state action went to trial, the Exxon subsidiaries prevailed on their counterclaim, and SABIC appealed to the state supreme court. *Id.* Meanwhile, SABIC moved to dismiss the federal action and when that motion was denied took an interlocutory appeal. *Id.* at 289-90. On appeal, the court of appeals *sua sponte* raised subject matter jurisdiction. The court concluded that once the state court entered a final judgment, the district court lacked jurisdiction, and the federal action was barred under the *Rooker-Feldman* doctrine. *Id.* at 290. It made no difference that the state action was still pending and undecided when the federal action was filed. *Id.* The federal action had to be dismissed.

The Supreme Court reversed. Reviewing the two cases that gave rise to the doctrine, the Court noted that each had involved a "losing party in state court" who "filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* at 291. Only in these "limited circumstances," the Court said, will the doctrine apply. *Id.* If a state court action goes to judgment while a parallel federal action is pending, the Court explained, disposition of the federal action "would be governed by preclusion law." *Id.* at 293. *Rooker-Feldman*, though, "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

judgments." *Id.* at 284.

*Exxon* "pared back the *Rooker-Feldman* doctrine to its core." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2nd Cir. 2005). It is now clear that the doctrine precludes federal jurisdiction only over "suits filed after state proceedings are final." *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006). For *Rooker-Feldman* to apply, the state court proceedings must have "ended," *Exxon*, 544 U.S. at 291, producing "state-court losers," *id.* at 284, before the federal action begins. And because the state proceeding must have ended, the *Rooker-Feldman* doctrine necessarily poses no jurisdictional bar to a federal action attacking an interlocutory state court order.[5/] *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (stating that "an interlocutory ruling does not evoke the doctrine or preclude federal jurisdiction"); *see also Guttman*, 446 F.3d at 1032; *Dornheim v. Sholes*, 430 F.3d 919, 923-24 (8th Cir. 2005); *Hoblock*, 422 F.3d at 89; *In re Gustin*, 343 B.R. 909, 913 (Bankr. W.D. Wis. 2005).

*Rooker-Feldman* does not deprive this court of jurisdiction over Hodges' adversary proceeding because the state mortgage foreclosure action against Hodges had not ended when he filed his adversary complaint. The state court had entered a judgment of foreclosure, true enough. But a judgment of foreclosure does not end a mortgage foreclosure case in Illinois. Upon entry of such a judgment, the Illinois Mortgage Foreclosure Law provides for the sale of

---

[5/] In the wake of *Exxon*, there may still be "difficult questions" about when state proceedings have "ended" for purposes of *Rooker-Feldman*. *Hoblock*, 422 F.3d at 89. The First Circuit has suggested three possibilities: (1) when the highest state court has affirmed the judgment; (2) when no party seeks or is entitled to seek further action from the state courts (as when the time to appeal a judgment has run); and (3) when all federal issues in the litigation have been resolved and only factual or state law issues remain. *See Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24-25 (1st Cir. 2005). The first two are "obvious," *id.* at 24; the third is not, although another court appears to endorse it, *see Mothershed v. Justices of the Sup. Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005). The *Rooker-Feldman* question in this adversary proceeding presents no such complexities.

the property once periods for reinstatement and redemption have expired.[6] 735 ILCS 5/15-1507(a) (2004). After the sale, the person who conducted it makes a report to the court, 735 ILCS 5/1508(a) (2004), and, upon motion, the court holds a hearing to confirm the sale, 735 ILCS 5/1508(b) (2004). At the hearing, a defendant can contest the sale's validity, though on limited grounds. *Id.*; *see Colon*, 319 F.3d at 915, 921. Only after confirmation of the sale and payment of the purchase price can the purchaser obtain a deed. 735 ILCS 5/15-1509(a) (2004).

Although the Illinois Mortgage Foreclosure Law employs the term "*judgment* of foreclosure," *see, e.g.*, 735 ILCS 15/1506(a)(2) (emphasis added), a foreclosure judgment does not conclude the case and is not final. "A judgment ordering the foreclosure of a mortgage is not final and appealable until the court enters orders approving the sale and directing the distribution." *In re Marriage of Verdung*, 126 Ill. 2d 542, 555, 535 N.E.2d 818, 824 (1989); *see also Agribank v. Green*, 188 B.R. 982, 990 n.4 (C.D. Ill. 1995); *In re Chapman*, 132 B.R. 132, 148 (Bankr. N.D. Ill. 1991); *In re McKillips*, 81 B.R. 454, 457 (Bankr. N.D. Ill. 1987); *Santana v. Zipperstein*, 142 Ill. App. 3d 386, 388, 491 N.E.2d 1231, 1232 (1st Dist. 1986); *King City Fed. Sav. & Loan Ass'n v. Ison*, 80 Ill. App. 3d 900, 901, 400 N.E.2d 562, 563 (5th Dist. 1980). Until the sale is confirmed, a foreclosure judgment is "modifiable by the trial court." *Santana*, 142 Ill. App. 3d at 388, 491 N.E.2d at 1232. The judgment is strictly interlocutory.[7]

---

[6] A mortgagor has the right to reinstate the mortgage by curing all defaults and paying the mortgagee's costs and expenses within 90 days of the date all mortgagors submitted to the jurisdiction of the court. 735 ILCS 5/15-1602 (2004). A mortgagor also has a statutory right to redeem the property, a right that expires three months after entry of the foreclosure judgment or seven months after the mortgagor submitted to the jurisdiction of the court, whichever is later. 735 ILCS 5/15-1603(b) (2004). Even after the statutory redemption right expires, a mortgagor has an equitable right of redemption until the foreclosure sale. 735 ILCS 5/15-1605 (2004).

[7] The district court recently reached the contrary conclusion in *Spencer v. Mortgage Acceptance Corp.*, No. 05 C 356, 2006 WL 1302413, at *5 (N.D. Ill. May 4, 2006), finding an

The case law occasionally seems confused on this point. Some decisions describe a judgment of foreclosure as a "final judgment" but then add that the judgment is not appealable. *See, e.g., Home Sav. of Am., F.S.B. v. Chicago Title & Trust Co.*, No. 92 C 5510, 1994 WL 323222, at *2 n.2 (N.D. Ill. June 30, 1994); *In re Green*, 180 B.R. 514, 521 (Bankr. C.D. Ill. 1995); *Santana*, 142 Ill. App. 3d at 388, 491 N.E.2d at 1232. Still others declare, cryptically, that a judgment of foreclosure is "final as to the matters it adjudicates." *See, e.g., Kress Road P'ship v. First Fed. Sav. & Loan Ass'n (In re Kress Road P'ship)*, 134 B.R. 301, 309 (Bankr. N.D. Ill. 1991); *Marion Metal & Roofing Co. v. Mark Twain Marine Indus., Inc.*, 114 Ill. App. 3d 33, 35, 488 N.E.2d 219, 221 (5th Dist. 1983); *King City*, 80 Ill. App. 3d at 901, 400 N.E.2d at 563.

The confusion, though, is more apparent than real. These decisions do not mean that a foreclosure judgment is "final" and so appealable as of right under Illinois Supreme Court Rule 301. Nor do they mean that it has any preclusive effect. They mean that the judgment is a "partial final order," or "partial final judgment," under Illinois appellate procedure: a judgment as to fewer than all claims or all parties, appealable only if the trial court makes the required finding under Illinois Supreme Court Rule 304(a).[8] *See Corsi v. Corsi*, 302 Ill. App. 3d 519,

---

Illinois state court foreclosure judgment to be "a final judgment on the merits of the case" and holding the mortgagee's federal action under the Truth In Lending Act barred by the *Rooker-Feldman* doctrine. For its characterization of the foreclosure judgment, however, the court relied exclusively on *Joliet Fed. Sav. & Loan Ass'n v. O'Hare Int'l Bank*, 12 Ill. App. 3d 1012, 299 N.E.2d 350 (3rd Dist. 1972), which contains the following dictum: "If a decree of foreclosure is entered in this case, then a final appealable order will have been entered." *Id.* at 1014, 299 N.E.2d at 351. The district court did not mention *Verdung* or any of the many other later decisions stating that a foreclosure judgment is not final and appealable.

[8]   For a judgment of this kind to be appealable, the trial court must have made "an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. Sup. Ct. R. 304(a). Rule 54(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 54(b), is the federal equivalent.

522, 706 N.E.2d 956, 959 (1st Dist. 1998). For a judgment of foreclosure to be appealable, the cases make clear, a Rule 304(a) finding is necessary. *Agribank*, 188 B.R. at 990 n.4; *Verdung*, 126 Ill. 2d at 555, 535 N.E.2d at 824; *Marion Metal*, 114 Ill. App. 3d at 35, 488 N.E.2d at 221; *King City*, 80 Ill. App. 3d at 901, 400 N.E.2d at 563. Without it, the judgment can be revisited at any time – modified, or even vacated – before the sale is confirmed.[9]

In this case, CIT's action against Hodges had not proceeded much beyond the foreclosure judgment stage when he filed the adversary complaint in his bankruptcy case. The judgment had been entered. The statutory redemption period had expired. But no foreclosure sale had been held, and so there was never a hearing to confirm a sale and never an order confirming one. Because the state court did not enter an order confirming a sale, there was no final order in the action. The foreclosure judgment, meanwhile, contains no Rule 304(a) finding. The judgment thus is not final and appealable but is still subject to modification. CIT's mortgage foreclosure action, in short, has not "ended." *Exxon*, 544 U.S. at 291. It is not close to ending. And Hodges therefore is not a "state-court loser," *id.* at 284 – not yet, anyway.[10]

---

[9] If a judgment of foreclosure does contain a Rule 304(a) finding, the defendant *must* appeal or lose all right to raise issues arising out of the judgment – even on appeal at the end of the case. *Pines v. Pines*, 262 Ill. App. 3d 923, 928, 635 N.E.2d 986, 989 (1st Dist. 1994) ("When an order includes a Rule 304(a) finding, it must be timely appealed or the right to challenge the ruling is lost."); *Stroud v. News Group Chicago, Inc.*, 215 Ill. App. 3d 1006, 1010, 576 N.E.2d 152, 155 (1st Dist. 1991); *see, e.g., City Nat'l Bank of Murphysboro v. Vancloostere*, 230 Ill. App. 3d 723, 724-25, 596 N.E.2d 208, 209-10 (5th Dist. 1992) (finding no jurisdiction after confirmation of sale to hear challenge to redemption period when foreclosure judgment setting redemption period contained Rule 304(a) finding and mortgagee had not appealed).

[10] Had the state court included a Rule 304(a) finding in the foreclosure judgment against Hodges, and had Hodges failed to appeal, the jurisdictional problem here would be more complex. Hodges would be barred from contesting the state court judgment, and the *Rooker-Feldman* question here would whether the state court case, though still pending, had "ended" in the third sense mentioned in *Federacion de Maestros*, 410 F.3d at 25. Because there was no rule 304(a) finding, however, the question need not be addressed.

Under the *Rooker-Feldman* doctrine post-*Exxon*, "[t]iming is everything." *Gustin*, 343 B.R. at 913. Because CIT's state court foreclosure action against Hodges had not ended when Hodges filed his adversary complaint in this court – and, indeed, still has not ended – the *Rooker-Feldman* doctrine does not bar the adversary proceeding. This court has subject matter jurisdiction, and the motion for judgment on the pleadings will therefore be denied.[11]

### 3. Conclusion

For the foregoing reasons, the motion of defendant CIT Group for judgment on the pleadings is denied. A separate order will be entered in accordance with this opinion.

Dated: October 4, 2006

ENTER: *[signature]*
A. Benjamin Goldgar
United States Bankruptcy Judge

---

[11] In its motion, CIT also seeks judgment on the pleadings on its affirmative defense of *res judicata*. But the motion merely mentions *res judicata* in passing and nowhere explains why CIT is entitled to judgment on that ground. As such, the argument is waived. *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006) (noting that it is not the court's obligation "to research and construct the legal arguments open to parties, especially when they are represented by counsel") (internal quotation omitted). Waiver aside, it may prevent a further Rule 12(c) motion to observe that the foreclosure judgment is not *res judicata* of any issues in Hodges' adversary proceeding. The preclusive effect of a state judgment in federal court is a matter of state law, *Brokaw*, 305 F.3d at 669, and in Illinois *res judicata* requires "a final judgment on the merits," *SDS Partners, Inc. v. Cramer*, 305 Ill. App. 3d 893, 896, 713 N.E.2d 239, 241 (4th Dist. 1999). As discussed above, the foreclosure judgment against Hodges is not final. Therefore, it has no *res judicata* effect. *See First Credit Corp. v. Budget Constr. Co. (In re Arnold)*, 147 B.R. 435, 438 n.2 (Bankr. N.D. Ill. 1992) (holding that a foreclosure judgment with no Rule 304(a) finding was not final and therefore not *res judicata* of the mortgagee's Truth in Lending Act claims asserted in the adversary proceeding in her chapter 13 bankruptcy case).